STATE OF NORTH CAROLINA v. CLEVELAND SYLVESTER HARRIS

No. 589A82

(Filed 5 April 1983)

1. **Criminal Law § 66.9— pretrial photographic identification—mug book disassembled before trial—procedure not impermissibly suggestive**

   A pretrial photographic identification procedure will not be deemed impermissibly suggestive because the mug book had been disassembled before trial and thus its contents were not available for examination by the trial court when ruling on the pretrial identification procedure where the witness was shown the mug book in 1974 and defendant was not arrested until 1981, and all of the evidence indicates that the mug book was disassembled in good faith for legitimate administrative reasons and not to cover up an impermissibly suggestive procedure.

2. **Criminal Law § 66.9— pretrial photographic identification—photograph of defendant wearing cap and scarf—no impermissible suggestiveness**

   A photographic identification procedure was not impermissibly suggestive because the mug book shown to a rape and robbery victim contained a photograph of defendant wearing a cap and scarf similar to the ones the victim had previously described her assailant as wearing at the time of the crimes where the identification occurred the day of the crimes; the victim had been with her assailant for about three hours on the day of the crimes; the victim was within approximately three feet of her assailant during the assaults on a sunny afternoon; at the time of the crimes the victim had a strong motive for and intention to remember the appearance of her assailant; a few hours after the incident she gave a detailed description of her assailant and the clothes he

was wearing; the victim testified that after the incident, she remembered the scarf as distinctive but the most vivid thing was the way her assailant's eyes looked; when the victim looked through the mug book, she picked out defendant's photograph without hesitation as being that of her assailant; and the photograph the victim picked out had been taken eleven days before the crimes in question when defendant was arrested for armed robbery, since it is clear that the victim's identification of the photograph was based on her memory of the encounter she had had with defendant the day before.

**3. Criminal Law § 66.16— pretrial photographic identification—independent origin of in-court identification**

Assuming arguendo that a pretrial photographic identification procedure could be found impermissibly suggestive, there was more than adequate evidence in the record to support the trial court's decision to hold a rape and robbery victim's in-court identification of defendant admissible as being of independent origin based upon the victim's observation of him on the day of the crimes.

**4. Criminal Law § 99.2— court's reading of statement to jury—no expression of opinion**

The trial court did not express an opinion or otherwise err in reading to the jury a written statement a rape and robbery victim had given to an officer the day after she was assaulted and in offering to allow defendant to recall the victim for cross-examination about the statement.

**5. Criminal Law § 102.3— exceptions to jury argument—failure to object at trial**

Defendant's exceptions to remarks by the prosecutor in his jury argument are deemed waived for purposes of appellate review where defendant failed to object to such remarks at trial and the record reveals that the remarks were not so improper as to require the trial court to curb the prosecutor's argument *ex mero motu.*

ON appeal by defendant from judgments entered by *Godwin, J.,* during the 19 April 1982 Criminal Session of Superior Court, WAKE County.

Defendant was charged in separate indictments proper in form with rape, crime against nature, common law robbery, and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was convicted of rape in the second degree, crime against nature, common law robbery, and assault with a deadly weapon with intent to kill inflicting serious injury.

Evidence for the State tended to show that on 30 May 1974 Ms. Katherine Troyer was a Yale College student driving a taxi as a summer job. On that date she was on duty in Raleigh when defendant approached her cab about 2:00 p.m. It was a sunny

afternoon and Ms. Troyer could see defendant clearly. Defendant asked Ms. Troyer if she could take him to Rolesville. She told him she could and gave him an estimate of the fare. Defendant walked away but returned shortly and got in the back seat of the cab, saying he wished to go to Rolesville. Defendant gave Ms. Troyer various instructions about where to turn to take him to his destination. Eventually he directed her to turn left into a road which immediately dead-ended in a field. As Ms. Troyer applied the brakes, defendant leaned forward quickly and grabbed the keys out of the ignition.

During the next several hours, defendant raped, robbed, and sexually assaulted Ms. Troyer. Ms. Troyer testified at trial that during this period she deliberately tried to remember things about her assailant in hopes of identifying him later. After sexually assaulting the victim, defendant strangled her unconscious with a scarf. When Ms. Troyer regained consciousness, she realized she was being held under water. She was in a pond and defendant was standing on her chest. Ms. Troyer struggled with the defendant and he dragged her out of the pond, but then threw her back in. Ms. Troyer managed to swim across the pond and, upon emerging, went through a small patch of woods and a plowed field. She came to a dirt road and walked down it until she encountered a farmer who took her to a nearby store. There, she contacted the sheriff's department.

When officers arrived Ms. Troyer described her assailant as a Negro male, approximately 21 years of age, six feet one inch tall, weighing about one-hundred-sixty pounds, having short black hair, two small patches of chin whiskers, and wearing a small blue cap and a pink and blue scarf. She also stated that he was wearing a dark V-neck shirt with two ties at the waist and light blue high waisted pants, and that he had a pierced left ear with what appeared to be a stick in the hole, a bumpy face, and crooked front teeth.

Defendant presented no evidence.

*Rufus L. Edmisten, Attorney General, by Guy A. Hamlin, Assistant Attorney General, for the State.*

*Joseph B. Cheshire, V, and Barbara A. Smith for defendant.*

MARTIN, Justice.

In this appeal defendant argues that he is entitled to a new trial because of errors committed by the trial court. After careful review of defendant's claims we have determined that defendant received a fair trial, free of prejudicial error. Accordingly, we affirm the judgments entered by the trial court.

Defendant first argues that the trial court erred in denying his motion to suppress testimony concerning the victim's view of a photographic lineup which defendant claims was impermissibly suggestive. He also claims the lineup was so suggestive that the victim's in-court identification of him as the assailant was tainted and also should have been suppressed.

Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247 (1968); *State v. Hammond*, 307 N.C. 662, 300 S.E. 2d 361 (1983); *State v. White*, 307 N.C. 42, 296 S.E. 2d 267 (1982); *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982). In the present case a voir dire was held upon defendant's motion to suppress. The court's findings of fact included the following: On 31 May 1974, the day after she had been assaulted, Ms. Troyer went to the Raleigh Police Department where she prepared a composite sketch of her assailant. Later on the same day Deputy Sheriff May of the Wake County Sheriff's Office brought Ms. Troyer a three-inch thick "mug" book containing about one-hundred-fifty color photos of black males, some of whom were wearing hats. Each photograph depicted either a head and shoulders front view or an upper body front view of one individual. A color photograph of the defendant wearing a cap and scarf similar to those described by Ms. Troyer as having been worn by her assailant, and similar to a cap and scarf found at the scene of her assaults, was about halfway through the mug book. This photograph showed the defendant full face and had been taken shortly after his arrest in Raleigh for armed robbery on 19 May 1974. Ms. Troyer was handed the mug book and asked to look through it to see whether she could identify a photo of her assailant. No remarks were made to Ms. Troyer which in any way suggested that defendant's photo was in the book, or

that Ms. Troyer should select it as best portraying her assailant. Ms. Troyer carefully examined dozens of photos in the book, and selected the defendant's without hesitation as being a photo of her assailant. The trial court concluded that this pretrial identification procedure was carried out in a fair and nonsuggestive manner and was not so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.

[1] Defendant argues that the trial court's conclusion was clearly erroneous and that the pretrial identification procedure was impermissibly suggestive for two reasons. First, defendant contends that the mug book must be deemed impermissibly suggestive as a matter of law because the mug book had been disassembled before trial and thus its contents were never available for examination by the trial court when ruling on the pretrial identification procedure.[1] Second, defendant argues that the procedure was impermissibly suggestive as a matter of fact because the photograph of him picked out by the victim portrayed the defendant wearing a cap and scarf similar to those described by Ms. Troyer as having been worn by her assailant. In support of his first contention defendant argues that when a photographic array cannot be reassembled for trial the court must presume that police prevented the composition of the array from being preserved to hide the fact that something about the array was impermissibly suggestive. *See United States v. Sonderup*, 639 F. 2d 294 (5th Cir.), *cert. den.*, 452 U.S. 920, 69 L.Ed. 2d 426 (1981); *Branch v. Estelle*, 631 F. 2d 1229 (5th Cir. 1980). We decline to adopt this presumption.

All of the evidence in the present case indicates that the mug book was disassembled in good faith for legitimate administrative reasons, not to cover up an impermissibly suggestive procedure. Defendant has failed to introduce any evidence to show the contrary. Ms. Troyer was shown the mug book in 1974, and defendant was not arrested for the crimes for which he was indicted in this case until 1981. During this period the contents of the mug book may have changed daily as photos were added or deleted with the ebb and flow of suspects having similar features. In addition, a new filing system for photographs of suspects has been im-

---

1. The photograph of the defendant that Ms. Troyer selected from the mug book was in evidence at trial.

plemented in the Raleigh Police Department, and it is likely that some of the photos from the 1974 mug book have been misplaced or destroyed in the changeover. In the absence of any evidence tending to show that the original book of photos was not available because of a "cover-up," we decline to endorse a presumption that the reason the book was unavailable was due to police misconduct. *See People v. Kaiser,* 113 Cal. App. 3d 754, 170 Cal. Rptr. 62 (1980). *Cf. United States v. Rivera,* 465 F. Supp. 402 (SDNY), *aff'd,* 614 F. 2d 1292 (2d Cir. 1979).

[2] Defendant next argues that the photographic show-up procedure in the present case was impermissibly suggestive as a matter of fact because the mug book shown to Ms. Troyer contained a photograph of defendant wearing a cap and scarf similar to the ones the victim had previously described her assailant as wearing at the time of the crime. A cap and scarf similar to those described by the victim were found at the crime scene the day after the assaults occurred.

Whether a pretrial identification procedure is so suggestive as to give rise to a very substantial likelihood of irreparable misidentification must be determined by a consideration of all the circumstances in each case. *Simmons v. United States, supra,* 390 U.S. 377, 19 L.Ed. 2d 1247 (1968). Even though a pretrial identification procedure may be suggestive, it will be *impermissibly* suggestive only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite,* 432 U.S. 98, 53 L.Ed. 2d 140 (1976); *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401 (1972). *See, e.g., State v. Thompson,* 303 N.C. 169, 277 S.E. 2d 431 (1981).

In the present case we find no error in the trial court's conclusion that the pretrial identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Ms. Troyer had been

with her assailant for about three hours on the day of the crimes. It was a sunny afternoon, Ms. Troyer was wearing her glasses, and she was within approximately three feet of her assailant during the assaults. At the time of the crimes Ms. Troyer had a strong motive for and intention to remember the appearance of her assailant. A few hours after the incident she described him as a Negro male, approximately 21 years of age, six feet one inch tall, weighing about one-hundred-sixty pounds, having short black hair, two small patches of chin whiskers, a bumpy face, crooked front teeth, and a pierced left ear with a stick through the hole. She stated that he was wearing a dark V-neck shirt with two ties at the waist, light blue high waisted pants, a small blue cap and a pink and blue neck scarf. On voir dire she testified that "after the incident, I remembered the scarf as distinctive . . . [but] the most vivid thing was the way his eyes looked. His eyes looked real sinister, very angry." The mug book shown to Ms. Troyer the day after she was assaulted contained some photographs of men wearing hats. When Ms. Troyer looked through it that day she picked out defendant's photo without hesitation as being that of her assailant.

The photograph Ms. Troyer picked out had been taken 19 May 1974, eleven days before her assaults, when defendant was arrested for armed robbery by Sergeant McLamb of the Raleigh Police Department. Sergeant McLamb had taken the photograph. During voir dire in the present case McLamb testified that when he arrested defendant on 19 May 1974 defendant "had a pierced left ear. I noticed it because he had an earring. As I recall when I arrested him he had a little patch of hair on his chin. He was unshaven, but these were more outstanding[:] [h]e was dressed in light blue pants, a black shirt, a blue cap, and [had] a rather unusual scarf around his neck." On 30 May 1974 when McLamb was shown the cap and scarf which were found at the scene of Ms. Troyer's assaults, McLamb recognized them as the cap and scarf defendant had worn on 19 May 1974, the day on which McLamb had arrested and photographed the defendant.

Under all of these circumstances we cannot agree that the fact that the photograph of defendant in the mug book showing him wearing clothes fitting Ms. Troyer's description of her assailant resulted in a very substantial likelihood of irreparable misidentification. It is clear that Ms. Troyer's identification of the

photograph was based on her memory of the encounter she had had with the defendant the day before. As Ms. Troyer stated on voir dire, "I believe that the appearance of the defendant prior to and during the assaults he made upon me left an indelible impression on my mind." She obviously remembered what he looked like the day after she was assaulted. Because the pretrial identification procedure was not unconstitutionally suggestive it was not error for the trial court to admit into evidence testimony concerning the photographic procedure.

[3] In addition, we hold that the trial court did not err in allowing Ms. Troyer to identify defendant in court as her assailant. Even assuming arguendo that the pretrial photographic lineup procedure could be found impermissibly suggestive, we find more than adequate evidence in the record to support the trial court's decision to hold Ms. Troyer's in-court identification admissible as being of independent origin. As stated in *State v. Thompson*, 303 N.C. 169, 172, 277 S.E. 2d 431, 434 (1981):

> The factors to be considered in determining whether the in-court identification of defendant is of independent origin include the opportunity of the witness to view the accused at the time of the crime, the witness' degree of attention at the time, the accuracy of his prior description of the accused, the witness' level of certainty in identifying the accused at the time of the confrontation, and the time between the crime and the confrontation.

Considering Ms. Troyer's in-court identification of defendant in light of all the circumstances adduced earlier in this opinion, it is clear that this identification of Cleveland Sylvester Harris was based upon Ms. Troyer's observation of him on 30 May 1974, the day of the assaults.

[4] Defendant next contends that the trial court erred by reading to the jury a written statement Ms. Troyer had prepared the day after she was assaulted. Ms. Troyer had given the statement to Officer May on 31 May 1974. On the stand at defendant's trial Officer May identified the statement and was asked to read it aloud to the jury to corroborate earlier testimony of Ms. Troyer. Defendant objected to this, and argued that "it speaks for itself. It's just—if the jury wants to take it back and read it I don't have any objection." The court replied that the witness

would be allowed to read the statement because it is not customary to permit the jury to take anything into the jury room. Defendant then objected again on grounds that the statement was repetitive. The court stated that it was unable to say whether or not the statement was repetitive and asked to see the exhibit. The court then read Ms. Troyer's statement to the jury. Following this, defendant made an oral motion to strike and a written motion for mistrial, both of which were denied. The court did offer defendant an opportunity to recall Ms. Troyer for the purpose of cross-examining her concerning the written statement. Defendant chose not to recall her.

Defendant now assigns as error the court's reading of Ms. Troyer's statement to the jury and its offer to allow defendant to recall Ms. Troyer for cross-examination about the statement. Defendant argues that by reading the victim's statement the court in effect became a witness for the prosecution, thus casting off its judicial cloak of impartiality. He claims that the court's offer to allow cross-examination was error because defendant's subsequent failure to recall Ms. Troyer probably caused the jury to believe that cross-examination would be useless and that therefore the jury gave Ms. Troyer's statement added weight. Defendant claims that these errors were so egregious that the court ought to have granted defendant's motion for a mistrial.

It is fundamental to our system of justice that each and every person charged with a crime be afforded the opportunity to be tried "before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State v. Carter*, 233 N.C. 581, 583, 65 S.E. 2d 9, 10 (1951). As the standard-bearer of impartiality the trial judge must not express any opinion as to the weight to be given to or credibility of any competent evidence presented before the jury. E.g., N.C. Gen. Stat. § 15A-1222 (1978); *State v. Brady*, 299 N.C. 547, 264 S.E. 2d 66 (1980); *State v. Guffey*, 39 N.C. App. 359, 250 S.E. 2d 96 (1979). However, it is a common practice in the courts of this State for a trial judge to read exhibits to the jury. The court's position as neutral governor of trial proceedings prevents this from being anything other than an impartial exposition of evidence, by itself not favorable to any party involved in the proceedings. In the instant case defendant does not contend that the manner in which the court read the victim's statement conveyed an opinion as to the truth or falsity of its contents.

Rather, defendant argues that the mere fact that the court read the victim's statement to the jury was an expression of opinion in favor of the State's case. On the record before us we cannot agree.

The manner of the presentation of evidence is largely in the discretion of the trial judge. His control of the case will not be disturbed absent a manifest abuse of discretion. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). There is nothing in the record before us to support a finding that the trial court abused its discretion by reading Ms. Troyer's statement aloud to the jury. The record is silent as to the manner in which Judge Godwin read the exhibit. The record does not support a finding that defendant was prejudiced by the manner in which the statement was read. *State v. Clanton*, 278 N.C. 502, 180 S.E. 2d 5 (1971). We reject defendant's argument that the judge's reading of the exhibit is in itself an expression of opinion.

The statement in question was admissible to corroborate the previous testimony of both the victim and an investigating officer. *See, State v. Sauls*, 291 N.C. 253, 230 S.E. 2d 390 (1976), *cert. den.*, 431 U.S. 916, 53 L.Ed. 2d 226 (1977). Both Ms. Troyer and Officer May had described before the jury the crimes which were perpetrated upon Ms. Troyer on the afternoon of 30 May 1974. Ms. Troyer's statement of 31 May 1974 contained an account of the assaults wholly consistent with her testimony at trial. Defendant did not object to the jury reading her statement, only to the statement being read aloud. In this case it may have helped rather than hurt defendant to have the statement read by an impartial third person instead of an interested witness for the State who had already testified about the crimes from his firsthand knowledge of the investigation. Moreover, defendant was given a full opportunity to recall and cross-examine the author of the statement. That defendant chose not to do so will not convert the entirely proper offer from the trial judge for defendant to cross-examine Ms. Troyer into error. Defendant's trial strategy is irrelevant to the propriety of the trial court's action in this instance.

[5] Defendant next argues that the court erred in failing to curb portions of the State's closing argument. Defendant brings forth one exception to a ruling in which the trial court overruled his ob-

jection to a remark made by the State. Defendant also excepts to remarks to which he did not object at trial. We will address the latter first. Ordinarily, "[w]hen counsel makes an improper remark in arguing to the jury, an exception must be taken before the verdict or the impropriety is waived." *State v. Davis*, 305 N.C. 400, 421, 290 S.E. 2d 574, 587 (1982). Only when the State's comments "stray so far from the bounds of propriety as to impede the defendant's right to a fair trial [does] the trial court [have] the duty to act *ex mero motu.*" *Id.*, at 422, 290 S.E. 2d at 587. *See also, State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982). The record in this case reveals that the State's remarks were not so improper as to require the trial court to curb the prosecution's argument *ex mero motu.* Therefore, defendant's exceptions to those remarks to which he failed to object at trial are deemed waived for purposes of appellate review.

Returning to the State's remark to which the defendant did object at trial, we observe that defendant offers no argument in his brief to support his claim that the court's ruling was erroneous. Instead, defendant's claim rests on his general contention that the remark to which he objected and the other remarks of the State to which he did not object, amounted to a "pattern of improper or hardly proper comment." Upon our examination of the record we do not find such a pattern. The trial court's ruling was not error.

We find that the defendant received a fair trial, free of prejudicial error.

No error.