STATE OF NORTH CAROLINA v. GREGORY CLEMENT CAPPS

No. 9312SC463

(Filed 5 April 1994)

1. **Evidence and Witnesses § 427 (NCI4th) — suggestiveness of showup identifications — no likelihood of misidentification**

    "Showup" identification procedures in which three witnesses observed defendant while he was sitting in a police car, coupled with statements made by officers to two of the witnesses that they had a suspect, that he had changed clothes, and that he no longer had a mustache, were unnecessarily suggestive. However, under the totality of the circumstances there was no substantial likelihood of misidentification and the identification of defendant by each witness was sufficiently reliable to be admissible where each witness observed defendant as he fled from the scene of an armed robbery; each witness indicated a high degree of attention to the appearance of the man they observed; the witnesses' descriptions of the perpetrator varied from defendant's appearance only because defendant had shaved his mustache and changed clothes between the time the witnesses observed him and his apprehension by the police; the identifications by all three witnesses

STATE v. CAPPS

[114 N.C. App. 156 (1994)]

occurred within an hour after the robbery; and the three witnesses were all unequivocal in their identifications of defendant.

**Am Jur 2d, Evidence § 371.6.**

**Admissibility of evidence of showup identification as affected by allegedly suggestive showup procedures. 39 ALR3d 791.**

2. **Evidence and Witnesses § 654 (NCI4th)— pretrial identifications—denial of motion to suppress—some findings based on trial evidence—absence of prejudice**

In an armed robbery prosecution in which the trial court denied defendant's motion to suppress pretrial identifications after a *voir dire* hearing but did not make written findings and conclusions until after the presentation of the evidence at trial, defendant was not prejudiced by the fact that the trial court based some of its findings on evidence heard at trial rather than at the *voir dire* hearing where ample evidence was presented at the *voir dire* hearing that fully supported the trial court's conclusion that there was no substantial likelihood of misidentification by the witnesses.

**Am Jur 2d, Motions, Rules and Orders § 25.**

On writ of certiorari from judgment entered 2 November 1990 by Judge J. Milton Read, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 1 November 1993.

*Attorney General Michael F. Easley, by Assistant Attorney General Sueanna P. Sumpter, for the State.*

*John G. Humphrey, II, for defendant appellant.*

COZORT, Judge.

The main issue presented by this appeal is whether the trial court erred by denying defendant's motion to suppress identification evidence. We find the identification procedure used by police, a "showup," was unduly suggestive. We also find, however, that under the totality of the circumstances present here, the identification of each witness was sufficiently reliable to be admissible. Defendant was charged with robbery with a firearm in violation of N.C. Gen. Stat. § 14-87 (1993). Prior to trial, defendant moved

to suppress certain pre-trial identification evidence. Following a
*voir dire* hearing, the trial court denied defendant's motion. Fol-
lowing the presentation of all evidence at trial, the trial court
entered an order making findings of fact which are summarized
as follows:

At about 8:15 a.m. on 27 October 1989, Ryan's Family Steak
House was robbed by a man wielding a handgun. Trevar Alexis,
an employee of the restaurant, could not identify the perpetrator.
At about 8:30 or 8:45 a.m., David Wrenn, an employee of a business
located near the restaurant, saw a man running across the lot
with another man chasing him. Wrenn had a clear view of the
man and pursued him in his automobile. Wrenn saw the man come
out of some bushes, approach a house, and knock on the door.
The man left the house and got into a blue Chevrolet with a South
Carolina license plate. Wrenn pulled in behind the car and clearly
saw the man's face in the rearview mirror. Wrenn returned to
his business and gave police information regarding the blue Chevrolet
and its license plate. Wrenn described the man "as having a mustache,
mole on his face, dark skin, and black hair, a Puerto Rican or
Mexican descent, and wearing dark clothing, a jacket, a shirt, and
bluejeans [sic]."

When the police returned later they told Wrenn that they
had stopped someone. They also told him that the man did not
have a mustache but that they had "the guy." Wrenn was taken
to a police car in which defendant was sitting. He recognized a
car nearby as the one he had seen earlier. Although defendant
did not have a mustache, Wrenn identified him as the man who
ran through the parking lot of his business, came out of some
bushes, knocked on a door, and got into a blue car with a South
Carolina license plate.

Richard Todd, employed by the same nearby business as Wrenn,
saw someone running by the building with a bag in his hand on
27 October 1989 at about 8:30 a.m. Todd heard someone say, "I've
been robbed." The man stopped and looked inside the window
of Todd's business. The man then continued running and jumped
a fence. Todd pursued the man on foot and watched as the man
stopped, looked at him, and took off his jacket. The man had dropped
a bag, and Todd picked it up and gave it to Trevar Alexis. About
fifty minutes later, the police approached Todd. He described the
man "as being five feet nine inches tall, to five feet eleven inches

tall, weighed between a hundred and sixty and a hundred and seventy pounds, dark complexion, heavy mustache and black hair."

A police officer later approached Todd and asked whether he could identify the subject. Todd replied that he could, and the officer took him to where defendant was in custody. The officer told Todd that the man in custody did not have on the same clothes and that his mustache was gone. Todd observed that defendant did not have a mustache and his hair was slicked back. The officer told Todd, "I think he has shaved." Todd identified defendant as being the man he saw run by his business, look in his window, jump a fence, and stop to take off his jacket when pursued. He also identified some clothing as that worn by defendant when he saw him earlier.

Heidi Boggs noticed that a blue car with a South Carolina license plate was parked by her driveway on the night of 26 October 1989. Sometime after 8:00 a.m. on 27 October 1989 a man knocked on Boggs' door. She went to the door and asked him if she could help him. He stepped back and said, "Never mind." She noticed that the man had dark hair and was wearing dark clothes, but she did not notice whether he had a mustache. She saw David Wrenn in a car behind the man's car. Police later asked her if she could identify the man she had seen, and Boggs said that she could. When Boggs saw defendant sitting in the police car, she recognized him as the man who had been on her porch that morning.

Officer Scott Burgess investigated the armed robbery of Ryan's Family Steak House on 27 October 1989. When he arrived at the scene, another officer was taking a statement from Trevar Alexis. Alexis described the assailant as being a male with a dark complexion, possibly Hispanic, wearing a heavy jacket, a green shirt, and some sort of camouflage mask with eye holes cut out. Alexis had seen the man running south on Raeford Road. At about 9:15 a.m., Burgess proceeded to an intersection where other officers had a blue car stopped. The officers were placing defendant in the back of a police car. Defendant was wearing a T-shirt, a navy blue baseball cap, and was clean-shaven. In defendant's car, officers found a heavy jacket lined with camouflage material. Both David Wrenn and Richard Todd identified defendant as the man they had seen earlier in the day. Heidi Boggs identified defendant as the man she had seen earlier after observing defendant's driver's

license. Trevar Alexis could not identify defendant as the perpetrator, but he said the clothes looked the same or similar.

An open shaving kit containing a portable rechargeable electric razor was found in the front seat of defendant's car. The razor contained thick dark hairs inside. Defendant's hair was wet and his face clean-shaven when he was apprehended, but his upper lip was pale compared to the rest of his face. There were also tiny spots of blood on his upper lip.

Based upon the findings of fact, the trial court concluded as follows:

1. The identification of the accused by the witnesses, Wrenn, Todd and Boggs, is not inherently incredible, given all the circumstances of the witnesses' ability to view the accused at the time of the crime. The credibility of the identification evidence is for the jury to weigh.

2. The pretrial identification procedure, the showup involving the Defendant, were not so impermissibly suggestive as to violate the Defendant's right to due process of law.

3. That this pretrial identification procedure involving the Defendant, even if impermissibly suggestive was reliable and was not productive of a substantial likelihood of misidentification, given the totality of circumstances surrounding this pretrial identification procedure, in that:

a. The witnesses' opportunity to view the accused and observe the physical characteristics of the accused was ample and sufficient to gain a reliable impression of the accused immediately after the time of the crime;

b. Each of these witnesses' degree of attention was strong and focused on the accused during the time the witnesses viewed the accused immediately after the crime;

c. The witnesses' description of the accused given to the police shortly after the crime was reasonably accurate and matched the main physical characteristics of the accused.

d. Each of the witnesses' level of certainty that the accused was the same person the witnesses observed immediately after this crime was firm was [sic] unequivocal.

e. That the time lapse between the crime an [*sic*] the pretrial identification procedure was not so long as to significantly diminish the witnesses' ability to make a strong and reliable identification of the perpetrator.

f. All other circumstances and events surrounding the crime and the pretrial identification procedure supporting the conclusion that the identification testimony by these witnesses possess sufficient aspect [*sic*] of reliability.

During trial, the State presented substantially the same evidence as presented during the *voir dire* hearing. David Wrenn, Richard Todd, and Heidi Boggs each testified that defendant was the man they had seen on the morning of 27 October 1989. The trial court ruled that the in-court identification testimony was of independent origin and was not tainted by any pretrial identification procedure. Trevar Alexis additionally testified at trial that on the morning of 27 October 1989, he was confronted by a man with a gun who demanded money. The man fled from the restaurant carrying a bag containing money.

The jury found defendant guilty as charged. From a judgment imposing a sentence of fourteen years in prison, defendant appeals.

**[1]** Defendant first argues that the trial court erred by denying his motion to suppress the identification testimony of witnesses Wrenn, Todd, and Boggs. Specifically, defendant contends the showups used during the pretrial identification procedure were unduly suggestive and resulted in the substantial likelihood of misidentification. We disagree.

Both the United States Supreme Court and our Supreme Court "have criticized the 'practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup . . . .' " *State v. Oliver*, 302 N.C. 28, 44, 274 S.E.2d 183, 194 (1981) (quoting *Stovall v. Denno*, 388 U.S. 293, 302, 18 L.Ed.2d 1199, 1206 (1967)). "[S]uch a procedure, sometimes referred to as a 'showup,' may be 'inherently suggestive' because the witness 'would likely assume that the police had brought [him] to view persons whom they suspected might be the guilty parties.' " *Id.* at 45, 274 S.E.2d at 194 (quoting *State v. Matthews*, 295 N.C. 265, 285-86, 245 S.E.2d 727, 739 (1978), *cert. denied*, 439 U.S. 1128, 59 L.Ed.2d 90 (1979)).

Identification evidence must be suppressed if the facts show the pretrial identification procedures were so suggestive as to create

a very substantial likelihood of irreparable misidentification. *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985). The determination of this question involves a two-step process: "First, the Court must determine whether the pretrial identification procedures were unnecessarily suggestive. If the answer to this question is affirmative, the court then must determine whether the unnecessarily suggestive procedures were so impermissibly suggestive that they resulted in a substantial likelihood of irreparable misidentification." *State v. Fisher*, 321 N.C. 19, 23, 361 S.E.2d 551, 553 (1987).

The likelihood of irreparable misidentification depends on the totality of the circumstances. *Id.* Factors to be considered in this determination include:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*State v. Harris*, 308 N.C. 159, 164, 301 S.E.2d 91, 95 (1983).

In this case, the three witnesses identified defendant as the man they had seen earlier in the day. During the identifications, defendant was sitting alone in the back of a police car. A police officer told David Wrenn that someone had been stopped but that the man did not have a mustache. The officer further stated that they had "the guy." Richard Todd was told by police that they had a man in custody but that he had on different clothes and that his mustache was gone. An officer told Todd that he thought the man had shaved. Heidi Boggs identified defendant after viewing his driver's license which was sitting on top of a car she believed she had seen earlier.

The identification procedures the officers chose, coupled with the statements made to two of the witnesses to the effect that they had a suspect, that he had changed clothes, and that he no longer had a mustache, were unduly suggestive. *See State v. Richardson*, 328 N.C. 505, 402 S.E.2d 401 (1991). Nevertheless, under the totality of the circumstances the identification by each witness was sufficiently reliable to be admissible.

Wrenn saw defendant as he ran past him. Wrenn also saw defendant's face in the rearview mirror of his car. Wrenn testified

that he focused on defendant as he ran by. Wrenn's description of the perpetrator was substantially similar to that of defendant. The only differences were that defendant had no mustache and his hair was wet. Wrenn was unequivocal in his identification of defendant only about thirty minutes after he first saw the perpetrator.

Todd observed the perpetrator from about five feet away as he looked into a window from the outside. Todd also observed the perpetrator from about thirty-five or forty feet as he stopped to take off his jacket. As a result of the perpetrator looking into the window, Todd went outside to investigate. It is apparent from Todd's actions that he paid attention to the man looking into the window. Todd's description of the perpetrator varied from that of defendant only in that defendant did not have a mustache and had on different clothing. Todd testified that he saw the clothing defendant had been wearing in a bag and that it appeared defendant was freshly shaven. Todd was unequivocal in his identification of defendant as the perpetrator about one hour after he first saw the man looking into his window.

Boggs observed the perpetrator when he came to her door. She testified that she looked at his face "really good." Boggs did not remember whether the perpetrator had a mustache, but she did remember that he had dark hair and dark clothes. Boggs was unequivocal in her identification of defendant as the perpetrator about thirty minutes after she saw him.

Considering the totality of these circumstances, we conclude that the effect of the suggestive identification procedure was insufficient to tip the scales against defendant. The witnesses had substantial opportunity to view defendant; the witnesses indicated a high degree of attention; any discrepancies in the descriptions were explainable; the identifications were certain; and the identifications followed within an hour of the initial sightings. For these reasons, there was not a substantial likelihood of misidentification. The trial court did not err by admitting the out-of-court identifications.

Furthermore, we hold that the in-court identifications made by the witnesses were properly admitted. The trial court did not err by finding that the in-court identifications were of independent origin.

STATE v. CAPPS

[114 N.C. App. 156 (1994)]

[2] Defendant also argues that the trial court's order denying his motion to suppress contained findings of fact not supported by evidence presented during the *voir dire* hearing. Specifically, defendant contends the trial court erred by basing some of its findings on evidence heard at trial rather than at the *voir dire* hearing.

The trial court denied defendant's motion to suppress immediately after holding a *voir dire* hearing, but the trial court did not make findings of fact in writing until after the presentation of evidence at trial. The trial court is not required to make findings and conclusions at the time of the ruling. *State v. Horner*, 310 N.C. 274, 311 S.E.2d 281 (1984). Furthermore, defendant has failed to show any prejudice resulting from the trial court's delay in making written findings and conclusions.

Defendant contends there was no evidence presented at the *voir dire* hearing to support the trial court's written findings (1) that Wrenn saw the perpetrator get into a car with South Carolina license plate FST752, (2) that the car which defendant was driving at the time he was stopped had South Carolina license plate FST752, and (3) that there was an electric razor in defendant's car. The trial court may have based some of its findings of fact on evidence presented only during the trial. However, there was no prejudicial error in light of the ample evidence presented during the *voir dire* hearing that fully supported the trial court's conclusion that there was no substantial likelihood of irreparable misidentification by the witnesses. *See State v. Steppe*, 19 N.C. App. 63, 198 S.E.2d 84, *appeal dismissed and cert. denied*, 284 N.C. 123, 199 S.E.2d 662 (1973).

No error.

Judges ORR and LEWIS concur.