HUNTER, Judge.
Joel Alexander McCullough ("defendant") was charged with possession of cocaine with the intent to sell or deliver. Prior to trial, defendant moved to suppress certain identification evidence and a hearing was held on that motion. The State's evidence tended to show that Officer Seth Greene ("Officer Greene"), a four-and-one-half-year veteran of the Charlotte-Mecklenburg Police Department, was participating in an undercover drug investigation in the downtown area of Charlotte on 27 March 2003. At about 6:00 p.m., Officer Greene observed defendant walking along the sidewalk on West Trade Street. Defendant approached Officer Greene's unmarked truck and inquired of the officer whether he was "'looking for some dope[.]'" When the officer told him yes, defendant got into Officer Greene's truck and asked the officer to drive around the block. Officer Greene told defendant that he wanted to buy some crack cocaine, and defendant pulled a packet, containing what was later determined to be crack cocaine, from his pocket. Officer Greene stopped the truck and defendant gave him the packet of crack cocaine, whereupon the officer gave defendant $15.00 in United States currency. Officer Greene then drove defendant to a location on Bungalow Road, where defendant got out of the truck.
After defendant got out of Officer Greene's vehicle, Officer Greene radioed Officer K. D. Faulkner ("Officer Faulkner"), also an officer with the Charlotte-Mecklenburg Police Department and who was serving as the identification officer for the undercover team. Officer Greene gave Officer Faulkner a description of defendant based upon the four or five minute drug exchange with defendant: 5'9", 220 pounds, black male, middle-aged, wearing a white hat, gray sweat pants, a white t-shirt and sunglasses.
About ten seconds after receiving Officer Greene's radio transmission, Officer Faulkner saw a person fitting the description just given by Officer Greene walking on Bungalow Road. The person was counting money as he walked. Significantly, there were no other persons fitting the description given by Officer Greene in the immediate area at that time. Officer Faulkner stopped his vehicle, and defendant walked over to the driver's side of the car and he and Officer Faulkner had a brief conversation. Officer Faulkner recognized defendant because he had arrested him several times before and had seen him on numerous occasions in the neighborhood. After his brief conversation with defendant, Officer Faulkner reported to Officer Greene that he had made a positive identification of the person who had sold him cocaine. Officer Faulkner then returned to the investigation briefing area.
Officer Greene thereafter saw defendant again on West Trade Street, and he pulled to the curb and initiated contact with defendant, saying "'I need a dime.'" Defendant responded to Officer Greene, telling him that he could get the drugs and directing the officer to drive around the block. Officer Greene complied, and drove about three blocks. After about a minute and a half, Officer Greene returned and defendant got into the truck. Defendant told the officer that he could only get a "dove," which is slang for a $20.00 piece of crack cocaine, whereupon Officer Greene told him that all he had was $10.00. Defendant broke the rock of cocaine in half and gave it to Officer Greene, and the officer paid defendant $10.00 in United States currency. Defendant then exited the vehicle.
Once defendant was out of Officer Greene's vehicle, the officer reported his second purchase from defendant to Officer Faulkner. In response, Officer Faulkner drove to the 2500 block of West Trade Street, where he observed defendant.
Officers Greene and Faulkner subsequently met back at the briefing area, at which time Officer Faulkner showed Officer Greene a picture of defendant obtained from a group of pictures that had been previously compiled by the police. Officer Greene identified the person in the picture as the same person who had twice sold him cocaine on the evening of 27 March 2003.
After hearing the evidence and arguments of counsel, the trial court rendered judgment on 6 October 2003 denying the motion to suppress. The matter thereafter came on for trial- with the State presenting the testimony of Officers Greene and Faulkner, which was in conformity with their earlier testimony at the suppression hearing. Additionally, defendant presented the testimony of an investigator, who processed defendant at the Mecklenburg County Jail, that defendant was measured at "[a]pproximately 63 and three quarter inches[]" tall with his shoes off.
The jury found defendant guilty as charged. The trial court then entered judgment on that verdict sentencing defendant to a presumptive term of twenty-nine to thirty-five months imprisonment. Defendant appeals.
On appeal, defendant argues that the trial court erred in denying his motion to suppress both the pre-trial identification and in-court identification testimony of Officers Greene and Faulkner. Defendant contends that the identification process was unnecessarily suggestive and created a substantial likelihood of pre-trial and in-court misidentification in violation of his due process rights. We disagree.
It is well settled that identification evidence must be excluded on due process grounds if a pre-trial identification procedure was "so suggestive as to create a very substantial likelihood of irreparable misidentification." State v. Capps, 114N.C. App. 156, 161-62, 441 S.E.2d 621, 624 (1994). In determining whether an identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification, the court employs a two-step inquiry. State v. Fowler, 353 N.C. 599, 617, 548 S.E.2d 684, 697-98 (2001), cert. denied, 535 U.S. 939, 152 L. Ed. 2d 230 (2002). First, the court must inquire as to whether "'the totality of the circumstances reveals a pretrial procedure so unnecessarily suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency and justice.'" Id. at 617, 548 S.E.2d at 698 (quoting State v. Hannah, 312 N.C. 286, 290, 322 S.E.2d 148, 151 (1984)). Next, "if the procedures were impermissibly suggestive, the Court must then determine whether the procedures created a substantial likelihood of irreparable misidentification." Id.
In the event that a pre-trial identification procedure is determined to be "impermissibly suggestive," the identification evidence may, however, still be properly admitted if the trial court determines that viewing the totality of the circumstances, the pre-trial identification did not create "substantial likelihood of irreparable misidentification." Id. at 617, 548 S.E.2d at 697-98. Factors to be considered in making this determination include the following: "'(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.'" Capps, 114 N.C. App. at 162, 441 S.E.2d at 624-25 (quoting State v. Harris, 308 N.C. 159, 164, 301 S.E.2d 91, 95 (1983)).
"Our review of a ruling on a motion to suppress is limited to whether the trial court's findings are supported by competent evidence and whether those findings support its ultimate conclusions." State v. McHone, 158 N.C. App. 117, 120, 580 S.E.2d 80, 83 (2003). In this case, our review is further limited, however, by defendant's failure to assign error to any of the trial court's findings of fact. The court's findings are, therefore, presumed correct and are binding on this Court on appeal. See Okwara v. Dillard Dep't Stores, Inc., 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) ("[w]here findings of fact are challenged on appeal, each contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding"). To that end, our review is limited to a determination as to whether the trial court's findings support its conclusions of law.
Employing the requisite factors to be used in making the determination of whether the pre-trial identification procedure created a substantial likelihood of irreparable misidentification, the trial court made the following pertinent findings:
1. On March 27, 2003, Officer Seth Greene was a Charlotte-Mecklenburg police officer assigned to the Street Crimes Unit. On that date he was working as an undercover narcotics officer and was operating an unmarked Ford pickup truck. He was participating in a drug investigation in the Smallwood neighborhood of Charlotte, located off West Trade Street.
2. Officer Greene had prior training in making identifications of drug suspects.
3. Officer Greene observed the Defendant walking along a sidewalk on West Trade Street during the early evening hours of March 27, 2003. The weather was clear. Officer Greene had no problems observing the Defendant on that occasion.
4. The Defendant asked Officer Greene whether he was looking for some "dope". The Defendant got into the officer's pickup truck on the passenger side and engaged in conversation with Officer Greene.
5. Officer Greene was sitting approximately two to three feet away from the Defendant while the Defendant was in his pickup truck.
6. Officer Greene observed that the Defendant was wearing a white baseball cap, sunglasses, gray sweat pants, and a white tee shirt. Officer Greene also observed that the Defendant appeared to be a middle aged man, five foot nine inches in height, and weighing approximately 200 pounds. He also noticed that the Defendant was not clean shaven.
7. Officer Greene engaged in a drug buy from the Defendant. The transaction took approximately three to four minutes. Officer Greene observed the Defendant take a piece of suspected crack cocaine from his left front pants pocket for which Officer Greene gave the Defendant $15.00 in U.S. currency.
8. At the Defendant's request, Officer Greene drove the Defendant to the intersection of Bungalow Drive and Rozzelles Ferry Road where the Defendant exited the pickup truck. Officer Greene subsequently transmitted over his police radio a description of the suspect to other police officers participating in the drug investigation.
9. Following Officer Greene's transmission, Officer K. D. Faulkner, a Charlotte-Mecklenburg police officer participating in the undercover drug investigation, and acting as the "cover officer" of Officer Greene, observed the Defendant near the intersection of Bungalow Drive and West Trade Street. The Defendant was wearing gray sweat pants, a white shirt, white hat, and sunglasses, and was counting money as he was walked [sic] down the street. Officer Faulkner recognized the Defendant as Joel McCullough, an individual whom Officer Faulkner had arrested at least four times previously and with whom he had other dealings over a four to five year period.
10. Officer Faulkner stopped and had a brief conversation with the Defendant and then continued on and radioed Officer Greene that he had identified the suspect.
11. Officer Greene later saw the Defendant again walking on West Trade Street and wearing the same items of clothing Officer Greene had observed previously. Officer Greene again talked with the Defendant and again engaged the Defendant in a drug transaction.
12. On the second encounter with Officer Greene, the Defendant got into the passenger's side of Officer Greene's pickup truck to conduct the drug transaction. The second drug transaction took approximately 30 seconds.
13. Officer Greene subsequently met with Officer Faulkner who presented a photograph. Officer Greene viewed the photograph (State's Exhibit Number 1) that he identified as being a photograph of the individual with whom he had engaged in the two drug transactions. The photograph was of the Defendant, Joel McCullough.
14. Neither Officer Faulkner nor any other police officer suggested that Officer Greene should identify the Defendant's photograph as that of the suspect with whom Officer Greene had engaged in the drug transactions. Officer Greene did not have any hesitation in identifying the Defendant as the person whom he had encountered in the two drug transactions.
Based on those findings of fact, the trial court made the following conclusions of law:
1. Officer Seth Greene's out of court identification and in court identification of the Defendant are reliable[.]
2. Officer K. D. Faulkner's out of court identification and in court identification of the Defendant are reliable.
3. The out of court and in court identifications of the Defendant by Officer Seth Greene and Officer K. D. Faulkner are based upon their opportunities to observe the Defendant which were sufficient to enable a positive identification. Officer Faulkner's identifications are further supported by his prior dealings with, and knowledge of, the Defendant. The identifications are not the result of an impermissibly suggestive identification procedure.
4. If the use of the single photograph by Officer Seth Greene and Officer K. D. Faulkner was impermissibly suggestive, under the totality of the circumstances, it did not create a substantial likelihood of irreparable misidentification.
5. The out of court identifications of the Defendant by Officer Seth Greene and Officer K. D. Faulkner, and the in court identifications of the Defendant by Officer Seth Greene and Officer K. D. Faulkner, do not violate any of the Defendant's rights under the Constitution of the United States of America or the Constitution of the State of North Carolina.
After a thorough review of the record evidence, we conclude that the trial court's findings, which are presumed correct, support its conclusions of law that both the pre-trial and in-court identifications of Officers Greene and Faulkner were admissible. We further conclude that the court's conclusions of law support its decision to deny the motion to suppress. Accordingly, the trial court did not err in denying defendant's motion to suppress.
Having so concluded, we hold that defendant received a fair trial, free from prejudicial error.
No error.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).