State v. Battle

No. 828SC342

(Filed 1 March 1983)

**1. Criminal Law § 66.9— photographic lineup—proper**

A series of photographic lineups were not improperly suggestive where defendant's photograph was unique in each of the lineups.

**2. Criminal Law § 73.2— statement not within hearsay rule**

It was not improper for a police captain to testify that a witness to a robbery told him that if he could be shown a "more up-to-date picture" he could be 100% positive of the identification of defendant since the testimony was proof as to why the captain showed the witness a fourth photographic lineup and was not introduced for the truth of the witness's statement.

**3. Criminal Law § 162.2— failure to properly object to testimony—previous objection not controlling**

It was necessary for defendant to object to a witness's testimony in order for it to be reviewed by the appellate court. The defendant's objection to a similar line of testimony did not prevent his need to object to the specific testimony which he contends was erroneously admitted since the trial court properly overruled his objection to the previous line of questioning. G.S. 15A-1446(d)(10).

**4. Kidnapping § 1.2— sufficiency of evidence**

The removal of a victim of armed robbery at gunpoint from a store after the defendant had taken money from him and his father at gunpoint was done

---

---

to facilitate the flight of the defendant "while in the commission of a felony" and supported a conviction of kidnapping. G.S. 14-39(a)(2).

**5. Kidnapping § 1.3— instructions—removal of victim as separate from felony**

Where the trial court instructed the jury that the State must prove beyond a reasonable doubt "that the defendant removed [the victim] from one place to another for the purpose of facilitating flight after committing a felony," the instruction was sufficient for the jury to understand that it must find that the removal was separate and apart from the other felony in order to find defendant guilty of kidnapping.

**6. Criminal Law § 99.2— statement to jury concerning defendant's address—no expression of opinion**

The trial court did not express an opinion as to defendant's guilt in violation of G.S. 15A-1232 when, shortly before the jury was impaneled, the court stated that defendant "allegedly lived on Magnolia Street in Sanford" where the judge's comment reflected a discrepancy among the arrest warrants as to the defendant's correct address and was made in an effort to determine whether any prospective jurors knew the defendant or were related to him.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 17 September 1981 in Superior Court, WAYNE County. Heard in the Court of Appeals 19 October 1982.

Defendant was tried for armed robbery, kidnapping and assault with a deadly weapon with intent to kill inflicting serious injury. Prior to the trial, a hearing was held on the defendant's motion to suppress the identification testimony of Tracey Grady who was in his father's store in Mount Olive at the time of the robbery. The evidence showed a black male came into the store. Tracey was watching television and paid no attention to the man until he heard a shot. Tracey Grady then saw his father, who had been shot, lying on the floor. The man who had come into the store forced Tracey, at gunpoint, to give him the money from the cash register. The robber asked Tracey where the remainder of the money was located and Tracey tried to open the door to the office, which was locked. He then forced Tracey to give him the money from Tracey's wallet and his father's wallet. The store was well-lighted at the time of the robbery.

The robber then forced Tracey, at gunpoint, to walk out of the store in front of him. He made Tracey walk to the side of the store and then ordered Tracey to "[t]urn around and run." Tracey ran down the street and returned shortly thereafter. As Tracey left the store, he noticed a yellow "Duster" automobile, with black

stripes on the side, parked in the parking lot. The car was no longer there when he returned to the store.

Tracey was shown a group of eight photographs by police officers on 19 December 1980. All the photographs were front view pictures. A photo of the defendant taken in 1973 was in the group. Tracey was not able to identify the defendant. The next day the officers replaced three of the photographs in the group, including the picture of the defendant, with three side view pictures of men. A side view picture of the defendant taken in 1973 was in this group. The other two photos were of men not included in the first group. Tracey did not identify the photograph of the defendant in this group as being the photograph of the robber. During the week of 4 January 1981 the officers showed Tracey a third photographic lineup. It contained seven of the photographs from the previous lineup with the defendant's photograph being replaced by another side view picture of the defendant. Tracey said the defendant's photograph looked like a photograph of the robber but it appeared to be an old photograph. He asked to see a more recent picture in order to make a more positive identification. The defendant was arrested and a photograph was taken of him on 4 February 1981. This picture was shown to Tracey in a photographic lineup with six pictures that had not previously been shown to him. Tracey identified the defendant's photograph and said he was sure it was a photograph of the robber.

The court found facts based on the evidence and held that the photographic lineups were not impermissibly suggestive. The court also held that Tracey Grady's in-court identification of the defendant was based on his observation of the defendant at the time of the robbery. The defendant's motion to suppress evidence of the lineups and the in-court identification of the defendant by Tracey Grady was denied.

The defendant was convicted of all charges and received an active prison sentence. He appealed.

*Attorney General Edmisten, by Assistant Attorney General Steven F. Bryant, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender James H. Gold, for defendant appellant.*

WEBB, Judge.

[1] Under his first assignment of error the defendant argues that the photographic lineups were impermissibly suggestive and it was error to admit testimony as to these lineups. The defendant argues under the same assignment of error that Tracey Grady's in-court identification was tainted by the lineup and should have been excluded.

The defendant argues that it was impermissibly suggestive for the defendant to be the only person to appear in a different photograph in the first two lineups and for the change of the defendant's photograph to be the only difference between the second and third lineups. The defendant contends that since his photograph was unique in each photographic lineup, the lineups effectively conveyed to Tracey Grady the message that the defendant was the man whom the police thought was the robber. We believe we are bound by *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982) to reject this argument by the defendant. In *Leggett* our Supreme Court held "The fact that a defendant's photograph is the only one common to two groups of photographs shown a victim is not sufficient, standing alone, to support a determination that pretrial photographic identification was conducted in an impermissibly suggestive manner." *Id.* at 222, 287 S.E. 2d at 838. The defendant does not contend that the photographic lineups were improper except for the manner in which the defendant's photographs were changed without changing other photographs in the lineups. We hold that we cannot disturb the findings of fact or the conclusion that the photographic lineups used in this case were not impermissibly suggestive. Since we have held the photographic lineups were not impermissibly suggestive, we also hold that the witness's in-court identification of the defendant was not tainted by an impermissibly suggestive lineup. The defendant's first assignment of error is overruled.

[2] In his second assignment of error the defendant argues that the court on two separate occasions admitted hearsay testimony. Tracey Grady testified that when he was being shown the third photographic lineup, he told Captain Ed Hudson of the Mount Olive Police Department he was 80% certain that the picture of the defendant was a picture of the robber. He testified further

that he did not say anything else to Captain Hudson at the time he was shown the pictures. Captain Hudson testified that Tracey told him that if he could show him a "more up-to-date picture," he could be 100% positive. The defendant argues that this was hearsay testimony and prejudicial to the defendant because it explained to the jury why Tracey could not identify the defendant's picture in the first three lineups. It is stated in 1 Brandis on N.C. Evidence § 139 (1982), at page 552 that:

> "Whenever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay."

In this case the testimony to which defendant objects was proof as to why Captain Hudson showed Tracey a fourth photographic lineup. It was not introduced for the truth of Tracey Grady's statement. It was not hearsay testimony.

[3] The defendant also argues under this assignment of error that he was prejudiced by other hearsay testimony of Captain Hudson. Walter Grady, the father of Tracey Grady, testified that he was shown four or five photographic lineups by Captain Hudson. He testified that when he was shown the last lineup, he said there was only one person in the lineup who could possibly be the man. When Captain Hudson was testifying, he said that Walter Grady pointed to the defendant's picture when he was shown the last lineup and said "The only one it looks close like is that one." The defendant argues this was hearsay testimony and it did not corroborate the testimony of Walter Grady.

The defendant did not object to this testimony. He contends that since he objected to what he contended was Captain Hudson's hearsay testimony as to what Tracey Grady had said, he did not have to object to the hearsay testimony of Captain Hudson as to what Walter Grady said. The defendant relies on G.S. 15A-1446 which provides in part:

> "(d) Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division.

. . . .

(10) Subsequent admission of evidence involving a
specified line of questioning when there has
been an improperly overruled objection to the
admission of evidence involving that line of
questioning."

One of the requirements for appellate review under this statute is
that there be an improperly overruled objection to testimony. If
there is such a ruling, the appellant does not have to object to
questions involving matters in the same line. In this case we have
held that Captain Hudson's testimony as to the statement of
Tracey Grady was properly admitted. Assuming that Captain
Hudson's testimony as to the statement of Walter Grady was in
the same line as his testimony of Tracey Grady, it was necessary
to object to this testimony in order for it to be reviewed by this
Court. The defendant's second assignment of error is overruled.

[4] The defendant argues under his third assignment of error
that the evidence was insufficient to support a conviction of kid-
napping. The defendant, relying on *State v. Irwin*, 304 N.C. 93,
282 S.E. 2d 439 (1981) argues that the asportation in this case was
an inherent and integrated part of the armed robbery and cannot
be considered as a separate crime of kidnapping. G.S. 14-39 pro-
vides in part:

"(a) Any person who shall unlawfully confine, restrain, or
remove from one place to another, any other person 16 years
of age or over without the consent of such person . . . shall
be guilty of kidnapping if such confinement, restraint or
removal is for the purpose of:

. . . .

(2) Facilitating the commission of any felony or
facilitating flight of any person following the
commission of a felony."

We believe the removal of Tracey Grady at gunpoint from the
store after the defendant had taken money from him and his
father at gunpoint was done to facilitate the flight of the defend-
ant "following the commission of a felony" and is a violation of
G.S. 14-39(a)(2). It is distinguishable from *Irwin* in which no person
was forced to leave the premises after the robbery.

[5]  The defendant also argues under his third assignment of error that the court committed error in the charge in that the court did not instruct the jury that the removal must have been "separate and apart from that which is an inherent, inevitable part of the commission of another felony." *State v. Irwin, supra* at 103, 282 S.E. 2d at 446. The court instructed the jury that the State must prove beyond a reasonable doubt "that the defendant removed James Tracey Grady from one place to another for the purpose of facilitating flight after committing a felony." Judge Bruce charged in the words of the statute and we believe this complied with the requirement of *Irwin* that the jury find that the removal be separate and apart from the other felony in order to find him guilty of kidnapping.

The defendant also contends the final mandate was misleading to the jury. The court charged:

> "I instruct you that if you find from the evidence and beyond a reasonable doubt that on or about the 5th day of December 1980 that the defendant, Harry Lee Battle, removed James Tracey Grady from one place to another within Grady's Grocery or from inside Grady's Grocery to somewhere outside . . . then it would be your duty to return a verdict of guilty of second degree kidnapping . . . ."

The defendant argues that this allowed the jury to convict him of kidnapping on the evidence that Tracey Grady was removed from one part of the store to another during the course of the robbery. There was evidence that the defendant forced Tracey Grady to move within the store and toward the exit after the defendant had taken the money and started for the door. Judge Bruce instructed the jury they had to find the removal of Tracey Grady was for the purpose of facilitating flight in order to convict the defendant of kidnapping. We do not believe that the final mandate misled the jury when read in conjunction with Judge Bruce's other instructions. The defendant's third assignment of error is overruled.

[6]  In his last assignment of error the defendant argues that the court expressed an opinion as to his guilt in violation of G.S. 15A-1232. Shortly before the jury was impaneled, the following occurred:

"THE COURT: Have any of you people formed or expressed any opinion about the guilt or innocence of Harry Lee Battle for any reason? If so raise your hand.

NO RESPONSE.

THE COURT: The defendant in this case, Harry Lee Battle, is seated at counsel table furthest away from you. He has on a light blue shirt. He allegedly lives on Magnolia Street in Sanford, North Carolina, and has lived at Vann Street in Goldsboro, North Carolina, or was living there on the date of this offense."

The court stated that the prosecuting witnesses resided in Dudley, North Carolina. The defendant contends that by questioning the truthfulness of the defendant's place of residence, the court intimated a view that the defendant and his witnesses were not worthy of belief. We do not believe this was an expression of an opinion as to the credibility of these witnesses. The record reveals there was some discrepancy among the arrest warrants as to the defendant's correct address. We believe the judge's comment reflected this discrepancy and was made in an effort to determine whether any prospective jurors knew the defendant or were related to him. We do not believe this remark prejudiced the defendant. The defendant's last assignment of error is overruled.

No error.

Judges HEDRICK and BECTON concur.