STATE OF NORTH CAROLINA v. BRIAN KEITH BOOZER AND DELSHAUN DARRON
COVINGTON

No. COA10-1018

(Filed 15 March 2011)

## 1. Kidnapping— first-degree—sufficient evidence—intent to cause bodily harm or terrorize

The trial court did not err in denying defendants' motions to dismiss first-degree kidnapping charges. The State presented sufficient evidence of each element of the crime, including defendants' intent to cause bodily harm or terrorize.

## 2. Kidnapping— first-degree—lesser-included offense—jury instruction—no error

The trial court did not commit plain error in a first-degree murder case by failing to instruct the jury on the lesser-included offense of false imprisonment. The State presented sufficient evidence that defendants removed the victim for the purpose of doing him serious bodily harm or terrorizing him.

## 3. Identification of Defendants— Harris factors—findings support conclusion

The trial court did not err in denying defendant's motion to suppress a witness's identification of defendant. The trial court's findings on each of the factors set forth in *State v. Harris*, 308 N.C. 159, fully supported its conclusion that there was no likelihood of irreparable misidentification.

## 4. Constitutional Law— effective assistance of counsel— counsel's performance not deficient

Defendant in a first-degree kidnapping case did not receive ineffective assistance of counsel during the trial. Defense counsel's performance was not deficient and although the trial court's kidnapping instruction was erroneous, the error was not prejudicial.

**5. Kidnapping— first-degree—jury instruction—erroneous— not prejudicial.**

    The trial court did not commit plain error in its instruction to the jury on first-degree kidnapping. Although the instruction was erroneous, the error did not have a probable impact on the jury's finding of guilt.

Appeal by Defendants from judgments entered 5 March 2010 by Judge James E. Hardin, Jr., in Wake County Superior Court. Heard in the Court of Appeals 10 February 2011.

    *Attorney General Roy Cooper, by Special Deputy Attorney General Kevin Anderson, for the State (Boozer appeal).*

    *Attorney General Roy Cooper, by Assistant Attorney General Kimberley A. D'Arruda, for the State (Covington appeal).*

    *Gilda C. Rodriguez for Defendant Boozer.*

    *Kevin P. Bradley for Defendant Covington.*

STEPHENS, Judge.

*I. Procedural Background*

    On 30 November 2009, the Wake County Grand Jury returned indictments against Defendants Brian Keith Boozer ("Boozer") and Delshaun Darron Covington ("Covington") (collectively, "Defendants") for assault with a deadly weapon with intent to kill inflicting serious injury, robbery with a dangerous weapon, and first-degree kidnapping. The cases were tried jointly at the 1 March 2010 criminal session of Wake County Superior Court. The jury found each Defendant guilty of assault inflicting serious injury, common law robbery, and first-degree kidnapping. The trial court sentenced the Defendants identically: it consolidated the robbery and assault offenses and imposed a sentence of 16 to 20 months in prison, to run concurrently with a sentence of 93 to 121 months imprisonment for the kidnapping offenses. Both Defendants appealed.

*II. Factual Background*

    About 10:00 p.m. on 14 September 2009, Clifton Batts rode his bicycle to the Raleigh home where Earnest Kincy resided with his son, Jonathan, and two cousins. Batts wanted to play cards with Kincy, but Kincy had already gone to bed. As Batts was leaving the house, he got into an argument with some people outside whom he

did not know. Batts could not remember the substance of the argument, but knew that, at some point, he was struck from behind. Batts did not recall what happened to him next.

Kincy and Jonathan heard the commotion as Batts was leaving and went outside on the front porch, where they saw three men in Kincy's yard assaulting someone they later learned was Batts. The men were kicking and hitting Batts in the head as he lay on the ground, and one of the men, known to Kincy and his son as "Taco," slammed Batts' bicycle down onto Batts several times and then took something from his wallet. From the porch, Kincy told the men to stop, but they continued to attack Batts. Kincy then walked down into the yard and again asked the men to stop. The three men stopped their attack and dragged Batts to the driveway where they attempted to stuff him into a garbage can. When they were unable to do so, they dragged Batts to a nearby ditch and threw him in before driving away.

Just after midnight on 15 September 2009, Officer Eric Wilson of the Raleigh Police Department received a call about the assault and went to investigate. He was familiar with the Kincy home because the police had received previous complaints of fights and drug sales there, as well as allegations that it was a liquor house. He found Batts lying in several inches of water in a 10-to 12-foot-deep ditch with mucus bubbling out of his mouth and nose. Responding paramedic Dwayne Tant arrived to find Batts non-responsive with facial lacerations and bruising across his head and chest. Kincy spent ten days in the hospital and underwent two surgeries. He suffered from a broken collarbone, broken nose, concussion, multiple lacerations, had his jaw wired shut for more than six weeks, and required a tube in his neck to help him breathe. The injuries left Batts disabled and unable to work.

Questioned by Officer David Deach, Kincy first said he did not see anything and did not want to be involved. After Detective P.A. Dupree told Kincy about the seriousness of Batts' injuries, Kincy described the assault and stated that he recognized the three men as people who had come to his house to "hang out" before, although he did not know their names. Kincy told Det. Dupree that a picture of one of the men was in a weekly newspaper called The Slammer, and Det. Dupree used the computer in his car to show Kincy the online edition of the paper. The edition included about 200 photographs with names, and Kincy viewed each page online, indicating that he did not see the man until the page showing Covington came up. Kincy identi-

fied Covington as one of the men who had assaulted Batts. Kincy's son Jonathan also identified Covington as one of the men, noting his light skin and dreadlocks as distinctive.

On 16 September 2009, Kincy called Det. Dupree to say that a different edition of The Slammer included a picture of another of Batts' assailants, and gave Det. Dupree the name Brian Boozer. Det. Dupree obtained a photograph of Boozer which Kincy confirmed as showing the second assailant. Later, Kincy provided Det. Dupree with the name "Taco" as the third man involved in Batts' assault. Police determined that "Taco" was a nickname for Brandon McCullers, whom Kincy identified in a photo lineup. One of McCullers' fingerprints was found on Batts' bicycle, but neither Covington's nor Boozer's fingerprints were matched to those on the bicycle.

Officer B.C. Scioli testified that he assisted in Boozer's arrest on 9 October 2009, and that, when told the officers were serving warrants for robbery and attempted murder, Boozer stated, "I only hit that man twice." Neither Covington nor Boozer presented evidence at trial.

On appeal, both Boozer and Covington argue that the trial court erred in denying their motions to dismiss the kidnapping charges for insufficiency of the evidence and failing to instruct the jury on the lesser included offense of false imprisonment. Because their arguments are similar and the evidence against them was the same, we address their contentions on these two issues together. Boozer also argues that the trial court erred in denying his motion to suppress Kincy's out-of-court identification of Boozer.

Covington makes two additional arguments: that he received ineffective assistance of counsel ("IAC"), and that the trial court committed plain error in instructing the jury on the kidnapping charge. For the reasons discussed below, we find no error as to Boozer. We find no prejudicial error as to Covington on the kidnapping instruction, and no error as to his remaining issues.

### III. Joint Issues on Appeal

*A. Denial of Motions to Dismiss the First-Degree Kidnapping Charges*

[1] Defendants argue that the trial court erred in denying their motions to dismiss the first-degree kidnapping charges for insufficient evidence of intent to cause bodily harm or terrorize. We disagree.

Appellate review of a denial of a motion to dismiss for insufficient evidence is *de novo. State v. Robledo*, 193 N.C. App. 521, 525, 668

S.E.2d 91, 94 (2008). "[T]he trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) (quoting *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). Substantial evidence is evidence that a reasonable person could accept as sufficient to support a conclusion. *Id.* When considering a motion to dismiss, "the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence." *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 256 (2002) (quoting *State v. Gibson*, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995)). Further, any contradictions in the evidence are to be resolved in the State's favor. *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine witness credibility. *Id.*

Defendants were convicted under N.C. Gen. Stat. § 14-39(a)(3) which provides:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. ...

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]

N.C. Gen. Stat. § 14-39(a) (2009). Thus, kidnapping is a specific intent crime and the State must show that the confinement, restraint, or removal of the victim was for one of the purposes listed in the statute. *State v. Rodriguez*, 192 N.C. App. 178, 187, 664 S.E.2d 654, 660 (2008). "A defendant's intent is rarely susceptible to proof by direct evidence; rather, it is shown by his actions and the circumstances surrounding his actions." *Id.* Here, Defendants were charged with confining, restraining or removing Batts for the purpose of doing serious bodily harm or terrorizing him. Defendants argue the State presented insufficient evidence on this element of intent. We disagree.

"Terrorizing is defined as more than just putting another in fear. It means putting that person in some high degree of fear, a state of

intense fright or apprehension." *State v. Davis*, 340 N.C. 1, 24, 455 S.E.2d 627, 639 (1995) (quotation marks and citation omitted). "In determining the sufficiency of the evidence, the test is not whether subjectively the victim was in fact terrorized, but whether the evidence supports a finding that *the defendant's purpose was to terrorize the victim.*" *Id.* (emphasis added) (internal quotation marks omitted). Likewise, it is not "the extent of physical damage to [the victim]" when considering the sufficiency of the evidence regarding intent to cause serious bodily injury. *State v. Washington*, 157 N.C. App. 535, 539, 579 S.E.2d 463, 466 (2003). "The question is whether [the] defendant's actions could show a specific intent *on his part* to do serious bodily harm to [the victim]." *Id.* (emphasis added).

Defendants assert that, because it was dark at the time, the assailants could not have known the depth of the ditch or that there were rocks at the bottom, and, thus, they cannot have intended to do serious bodily harm to Batts. They further assert that Batts did not remember anything after the first blow and thus could not have been terrorized by his assailants' actions. They contend that they and the other assailant simply wanted to remove Batts from Kincy's property so they could leave. These arguments go to the weight of the evidence and also rely on evidence unfavorable to the State, neither of which is considered by the trial court in making a sufficiency determination on a motion to dismiss. *Lucas*, 353 N.C. at 581, 548 S.E.2d at 721.

Evidence favorable to the State which could support a reasonable inference of intent to terrorize or cause bodily harm to Batts included the following: Boozer had been to Kincy's home on several prior occasions, during which he may have seen the deep ditch. After severely beating Batts, Defendants first attempted to stuff him into a garbage can. When that proved impossible, they dragged him across Kincy's yard and threw him into a 10- to 12-foot-deep ditch with rocks and water in the bottom. Batts could not recall anything after the assault began and was not struggling or moving during this process. This evidence could support a reasonable inference that Defendants intended to cause Batts serious bodily injury if they believed he was unconscious and unable to protect himself as he was thrown into the deep ditch, landing on rocks and possibly drowning. Alternatively, this evidence could support a reasonable inference that Defendants intended to terrorize Batts if they believed him to be conscious and aware of being stuffed into a garbage can and then flung into a deep, rocky, water-filled ditch. In the light most favorable to the State and giving the State the benefit of every reasonable inference, we conclude that

this evidence could support a conclusion by a reasonable person that Defendants intended to terrorize or cause serious bodily harm to Batts. Accordingly, the trial court properly denied Defendants' motions to dismiss. This argument is overruled.

### B. Jury Instruction on False Imprisonment

**[2]** Defendants also argue that the trial court committed plain error in failing to instruct the jury on the lesser included offense of false imprisonment because removal occurred without the intent to do serious bodily harm or terrorize. We disagree.

As Defendants concede, they did not request an instruction on false imprisonment, and thus are limited to arguing plain error in the trial court's failure to give the instruction *sua sponte*. Plain error occurs when "the error is so fundamental that it undermines the fairness of the trial, or where it had a probable impact on the guilty verdict." *State v. Floyd*, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240 (2002).

It is well-established that

> the trial court must submit and instruct the jury on a lesser included offense when, and only when, there is evidence from which the jury could find that [the] defendant committed the lesser included offense. However, when the State's evidence is . positive as to every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged, the trial court is not required to submit and instruct the jury on any lesser included offense. The determining factor is the presence of evidence to support a conviction of the lesser included offense.

*State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984) (citations omitted). "Failure to so instruct the jury constitutes reversible error not cured by a verdict of guilty of the offense charged." *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986) (citation omitted).

"False imprisonment is a lesser[]included offense of kidnapping." *State v. Kyle*, 333 N.C. 687, 703, 430 S.E.2d 412, 421 (1993). The distinguishing factor between kidnapping and false imprisonment is the purpose of the confinement, restraint or removal of another person. *Id.* "So, whether a defendant who confines, restrains, or removes another is guilty of kidnapping or false imprisonment, depends upon whether the act was committed to accomplish one of the purposes enumerated in our kidnapping statute." *State v. Lang*,

58 N.C. App. 117, 118-19, 293 S.E.2d 255, 256, *cert. denied*, 306 N.C. 747, 295 S.E.2d 761 (1982). "Thus, the State must prove that the defendant kidnapped with the intent to commit the particular felony charged in the indictment." *Rodriguez*, 192 N.C. App. at 189, 664 S.E.2d at 661 (citation omitted). "However, the trial court does not have to instruct on false imprisonment if there is sufficient evidence that the defendant acted with a purpose enumerated in N.C. Gen. Stat. § 14-39." *Id.* To prevail, Defendants would have to show that the State did not present sufficient evidence that they removed Batts for the purpose of doing him serious bodily harm or terrorizing him, *and* "that the jury probably would have convicted [them] of false imprisonment rather than kidnapping if the judge had given an instruction on false imprisonment." *Id.* at 190, 664 S.E.2d at 662 (discussing the defendant's burden when arguing plain error on this point).

Here, Defendants base their arguments on the contentions they made regarding sufficiency of the evidence on the purpose element. Having rejected that argument above, we likewise reject it here, and hold that the State presented sufficient evidence that Defendants removed Batts for the purpose of doing him serious bodily harm or terrorizing him. Thus, no instruction on false imprisonment was required and Defendants cannot show any error by the trial court, let alone plain error.

## IV. Boozer's Appeal

### A. Identification Procedure

[3] Boozer argues that the trial court erred in denying his motion to suppress Kincy's identification of Boozer. We disagree.

"This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law." *In re Pittman*, 149 N.C. App. 756, 762, 561 S.E.2d 560, 565 (citation omitted), *disc. review denied*, 356 N.C. 163, 568 S.E.2d 608 (2002), *cert. denied*, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). "[I]f so, the trial court's conclusions of law are binding on appeal." *State v. West*, 119 N.C. App. 562, 565, 459 S.E.2d 55, 57, *disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995). "If there is a conflict between the [S]tate's evidence and [the] defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on

STATE. v. BOOZER

[210 N.C. App. 371 (2011)]

appeal." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982).

Regarding suppression of out-of-court identifications, we have held that:

> Identification evidence must be suppressed if the facts show the pretrial identification procedures were so suggestive as to create a very substantial likelihood of irreparable misidentification. *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985). The determination of this question involves a two-step process: "First, the Court must determine whether the pretrial identification procedures were unnecessarily suggestive. If the answer to this question is affirmative, the court then must determine whether the unnecessarily suggestive procedures were so impermissibly suggestive that they resulted in a substantial likelihood of irreparable misidentification." *State v. Fisher*, 321 N.C. 19, 23, 361 S.E.2d 551, 553 (1987).
>
> The likelihood of irreparable misidentification depends on the totality of the circumstances. *Id.* Factors to be considered in this determination include:
>
> > (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.
>
> *State v. Harris*, 308 N.C. 159, 164, 301 S.E.2d 91, 95 (1983).

*State v. Capps*, 114 N.C. App. 156, 161-62, 441 S.E.2d 621, 624-25 (1994).

Here, Boozer challenges only two portions of the trial court's finding of fact 10, which states:

> 10. Mr. Kincy testified at the hearing that he knew the defendant and the defendant's name prior to the date of the incident. He (Kincy) also stated that he had played cards with the defendant on three different occasions. Each of these card games had lasted two or three hours. On the night of the subject incident, Kincy had seen the defendant in the hallway and had briefly spoken to him. Once the beating began, Kincy had observed the defendant in the front yard of the Malta Avenue [house] for approximately fifteen minutes. During that time, Kincy

was separated from the defendant by a distance of three feet or less.

Specifically, Boozer contends that while the trial court·found that "[e]ach of these card games had lasted two to three hours[,]" Kincy's testimony was actually that he had played cards with Boozer for two or three hours *total.* Boozer also contends that the trial court incorrectly found that Boozer and Kincy spoke on the night of the attack. On direct examination, Kincy was asked if he spoke to Boozer that night, to which Kincy replied, "Not that night." We agree that those two portions of finding 10 are not supported by competent evidence. However, the remainder of finding 10 and the trial court's additional findings of fact are unchallenged and, thus, are binding on appeal.

In his brief, Boozer does not argue that any specific conclusion of law is not supported by the remainder of finding 10 and the trial court's other findings. Instead, he argues that, "[u]nder the totality of the circumstances described and the factors considered, the suggestive procedure used in the identification of Mr. Boozer created a substantial likelihood of irreparable misidentification." Boozer discusses evidence from the suppression hearing and contends that, applying the factors listed in *Harris,* the trial court should have reached different conclusions and allowed his motion to suppress. While Boozer was free to make this argument at the suppression hearing in the trial court, it is misplaced on appeal to this Court where our task is "strictly limited to a determination of whether the [trial] court's . . . findings support [its] conclusions of law." *In re Pittman,* 149 N.C. App. at 762, 561 S.E.2d at 565. However, we treat Boozer's contentions as a challenge to the trial court's conclusion 2:

> 2. That this Court finds, by at least a preponderance of the evidence, that the pretrial identification procedure employed by Detective Dupree, to wit: the showing of a photograph of [] defendant initially generated from "The Slammer Newspaper" to the witness, was neither impermissibly suggestive, nor was there any likelihood of irreparable ·misidentification, in consideration of the "totality of the circumstances." State of North Carolina v. Harris, 308 N.C. 159 (1983).

The first two factors under *Harris* are "the opportunity of the witness to view the criminal at the time of the crime" and "the witness's degree of attention[.]" *Harris,* 308 N.C. at 164, 301 S.E.2d at 95. As noted above, in finding 10, the trial court stated: "Once the beating began, Kincy had observed the defendant in the front yard of

the Malta Avenue [house] for approximately fifteen minutes. During that time, Kincy was separated from the defendant by a distance of three feet or less." This finding indicates that Kincy had the opportunity to view Boozer at close range for an extended period of time and that Kincy was focused on and paying attention to Boozer for at least fifteen minutes.

Relevant to the third and fourth *Harris* factors, "the accuracy of the witness's prior description of the criminal" and "the level of certainty demonstrated by the witness at the confrontation[,]" the trial court made the following findings:

> 3. Ernest Kincy also told Detective Dupree that he was familiar with all three suspects and that they came to his residence on Malta Avenue on a regular basis. Kincy further indicated that he knew all three suspects by sight but did not know their names.
>
> . . .
>
> 7. On the following day, September 16, 2009, Kincy contacted Detective Dupree by phone and informed him that he had observed one of the suspects from this case in another edition of "The Slammer Newspaper." He said that this suspect's name was Brian Boozer and that he had been arrested approximately two weeks earlier on a warrant issued as a result of a Failure to Appear for Court.
>
> . . .
>
> 9. Detective Dupree met with Ernest Kincy a short time later and presented him (Kincy) with the August 27, 2009 arrest photo of [D]efendant. Mr. Kincy immediately identified [D]efendant as one of the individuals that he had seen beating and robbing the victim on September 15, 2009.

These findings show that Kincy had previously described one suspect as Brian Boozer, a person he knew and had interacted with previously, and that he immediately identified a photograph of Boozer. These findings indicate high levels of both accuracy and confidence in Kincy's description and identification of Boozer. Finally, as determined in findings 3, 7 and 9, Kincy stated that he recognized but could not name the suspects on the night of the attack on Batts. However, Kincy then named Boozer as a suspect and identified a photograph of him the next day, a very brief "length of time between the crime and the confrontation[,]" the fifth factor listed in *Harris. Id.*

The trial court's findings on each of the *Harris* factors fully support its conclusion 2, that there was no "likelihood of irreparable misidentification, in consideration of the 'totality of the circumstances.' " The trial court, thus, properly denied Boozer's motion to suppress, and accordingly, this argument is overruled.

## V. Covington's Appeal

### A. Ineffective Assistance of Counsel

[4] Covington argues that he received ineffective assistance of counsel during his trial. We disagree.

In making his IAC claim, Covington asserts four errors by his trial counsel: failing to seek remedy for alleged violations of the Eyewitness Identification Reform Act, failing to object to the admission in evidence of Boozer's admission of participation in the assault, failing to object to the trial court's kidnapping instruction, and failing to request submission of false imprisonment as a lesser included offense of kidnapping.

Criminal defendants are entitled to the effective assistance of counsel. *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985) (citation omitted).

> When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. *Strickland v. Washington*, [466] U.S. [668], [687,] 80 L. Ed. 2d 674, 693 (1984). In order to meet this burden defendant must satisfy a two part test.
>
>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable*. (Emphasis added).
>
> *Id.* at [687], 80 L. Ed. 2d at 693.

*Id.* at 561-62, 324 S.E.2d at 248. In considering IAC claims, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not

determine whether counsel's performance was actually deficient." *Id.* at 563, 324 S.E.2d at 249.

Covington first contends that he received IAC because his trial counsel did not seek remedy for Kincy's identification of Covington by examining online pages of The Slammer, which he contends was a violation of N.C. Gen. Stat. § 15A-284.52(b) (2009) (specifying eyewitness identification procedures for lineups conducted by law enforcement officers). Subsection (d) of this statute provides remedies available for noncompliance with the procedures:

(1) Failure to comply with any of the requirements of this section shall be considered by the court in adjudicating motions to suppress eyewitness identification.

(2) Failure to comply with any of the requirements of this section shall be admissible in support of claims of eyewitness misidentification, as long as such evidence is otherwise admissible.

(3) When evidence of compliance or noncompliance with the requirements of this section has been presented at trial, the jury shall be instructed that it may consider credible evidence of compliance or noncompliance to determine the reliability of eyewitness identifications.

N.C. Gen. Stat. § 15A-284.52(d).

Covington's trial counsel did not put on evidence of noncompliance with the statute's requirements at trial, nor did he seek any of these remedies. Covington asserts that Det. Dupree pressured Kincy to make an identification from The Slammer. Covington now contends that, had trial counsel asked for a jury instruction "that it may consider credible evidence of compliance or noncompliance to determine the reliability of eyewitness identifications" as provided in subsection (d)(3), the jury might have reached a different verdict. We are not persuaded.

First, because Covington did not present evidence of noncompliance with the statute's requirements at trial, the remedies of subsection (d)(3) are not available to him. There was no "credible evidence of compliance or noncompliance" for the jury to consider.

Further, we do not believe any violation of section 15A-284.52 occurred. In addition to the specific procedures listed in subsection (b), subsection (c) allows the use of "[a]ny other procedures that achieve neutral administration[,]" emphasizing that "[a]ny alternative

method shall be carefully structured to achieve neutral administration and to prevent the administrator from knowing which photograph is being presented to the eyewitness during the identification procedure." N.C. Gen. Stat. § 15A-284.52(c).

Here, Kincy told Det. Dupree that he had seen one of the men in The Slammer, but did not recall his name. Lacking a name for the suspect, the detective could not arrest the suspect or obtain his photograph, and, thus, the officer was unable to conduct a live or photographic lineup complying with the requirements of subsection (c). However, the method employed here, allowing Kincy to look through pages of photographs for the picture he recalled, did employ a neutral administration. Det. Dupree did not know who Kincy was looking for and therefore could not have pressured him to select Covington. It was Kincy who suggested he had seen a suspect in the paper, and no evidence at trial suggests that Det. Dupree pressured Kincy to make a selection of any photograph. Covington notes that Det. Dupree told Kincy that if "it's his house, he is responsible for what happened at his house and we need to find out what happened. If he had information he needed to cooperate with me and tell me." Covington characterizes this comment as "pressuring [Kincy] to choose a photograph from The Slammer." We find nothing objectionable in this exchange and conclude that Covington has failed to show any violation of N.C. Gen. Stat. § 15A-284.52, and in turn, has failed to show IAC on this basis.

Covington next contends that his trial counsel erred by failing to point out the prejudice to him of Boozer's admission to police that "I only hit that man twice" and to request an instruction that the jury not consider the admission against Covington. "[I]n a joint trial[,] the admission of a non-testifying codefendant's extrajudicial confession, which implicates his codefendant[], is a violation of the codefendant's 'right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.' " State v. Gonzalez, 311 N.C. 80, 92, 316 S.E.2d 229, 236 (1994) (quoting Bruton v. United States, 391 U.S. 123, 126, 20 L. Ed. 2d 476, 479 (1968)). However, a codefendant's statement which does not mention or refer to the defendant does not implicate the Confrontation Clause or Bruton. Id. at 94, 316 S.E.2d at 237.

Here, Covington acknowledges that Boozer's statement did not mention Covington; thus, its admission did not implicate his constitutional rights and was not a violation of our case law or statutes. Thus, his trial counsel did not err in failing to raise this issue. We further note that Covington does not explain how Boozer's admission

of his own involvement in the assault altered the outcome of Covington's trial. Covington has failed to show IAC on this basis.

Covington also alleges IAC in his trial counsel's failure to object to the trial court's kidnapping instruction and to request submission of false imprisonment as a lesser included offense. As discussed above, because the State presented sufficient evidence about the purpose of Batts' removal, such an instruction was not warranted. Thus, Covington's trial counsel's performance was not deficient. Further, as discussed below, although the trial court's kidnapping instruction was erroneous, the error was not prejudicial. Covington's IAC claims are overruled.

*B. Kidnapping Instruction*

**[5]** Covington argues that the trial court committed plain error in its instruction to the jury on first-degree kidnapping. We disagree.

Specifically, Covington asserts that the trial court erred in instructing the jury that, in order to find him guilty of first-degree kidnapping, it must find that the restraint or removal of Batts was "a separate, complete act *independent of and apart from the injury or terror to the victim*" rather than "a separate, complete act, *independent of and apart from [] the assault and robbery charged in this case.*" Covington did not object to the instruction at trial and, thus, argues plain error on appeal. *State v. Goforth*, 170 N.C. App. 584, 587, 614 S.E.2d 313, 315 (2005) (holding that defendants who do not object to jury instructions at trial are subject to a plain error standard of review on appeal).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007) (emphasis and brackets in original) (citation omitted). "In deciding

whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Smith*, 162 N.C. App. 46, 51, 589 S.E.2d 739, 743 (2004) (citation omitted). Here, we conclude that, although the instruction was erroneous, the error did not impact the jury's finding of guilt.

Under N.C. Gen. Stat. § 14-39, kidnapping is defined as the unlawful confinement, restraint, or removal from one place to another of "any other person 16 years of age or over without the consent of such person, . . . if such confinement, restraint or removal is for [one or more of various listed purposes.]" N.C. Gen. Stat. § 14-39(a) (2009). Our courts have construed

> the phrase "removal from one place to another" to require a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony. To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy.

*State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981) (citation omitted). However, "there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony." *State v. Clinding*, 92 N.C. App. 555, 560, 374 S.E.2d 891, 893-94 (1989) (quoting *State v. Fulcher*, 294 N.C. 503, 524, 243 S.E.2d 338, 352 (1978)); *see, e.g., State v. Battle*, 61 N.C. App. 87, 93, 300 S.E.2d 276, 279 ("pproving instruction " 'that the defendant removed [the victim] from one place to another for the purpose of facilitating flight after committing a felony.' "), *disc. rev. denied*, 309 N.C. 462, 307 S.E.2d 367 (1983).

Here, the trial court instructed the jury that it need only find that the restraint or removal aspect of the kidnapping "was a separate, complete act *independent of and apart from the injury or terror to the victim*." (Emphasis added). Unlike the jury instructions in *Battle* and *Clinding*, the instruction here did not distinguish between the restraint as a part of the kidnapping and any restraint or removal that was part of the assault or robbery of Batts. Thus, the trial court's instruction was error.

However, because the evidence indicates that the assault stopped before Batts' removal, we cannot conclude that this "instructional error had a probable impact on the jury's finding of guilt." *Smith,* 162 N.C. App. at 51, 589 S.E.2d at 743. Our review of the record reveals the following evidence regarding restraint or removal of Batts during the attack by Covington and the other assailants. Kincy testified that when he heard a commotion, he went to his door and saw three men beating and kicking another man who was on the ground. Kincy went out onto his porch and told the men to stop, but they did not. Kincy went on to testify:

> [Kincy]: . . . They wouldn't stop so I walked to the bottom of the steps, and like I said, they were hitting him upside the head so *I stepped right up by his head and I asked them to stop again and one of the biggest guy, he looked up at me and he stopped.* I mean he said come on, let's get him out of his yard.
>
> Q. What happened then?
>
> [Kincy]: So then when they stopped they picked him up, they tried to put him in the city trash can but they couldn't raise him high enough to put him in the trash can. So they drug him over to the drive and threw him down the ditch.

(Emphasis added). Kincy's uncontradicted testimony indicates that the assault on Batts stopped before the men removed Batts, first to the trash can and then to the ditch. No evidence suggested that the assault was continuing during the time Batts was removed. We thus conclude that the erroneous instruction did not have a probable impact on the jury's finding of guilt, and accordingly, we overrule this argument.

No error as to Defendant Boozer.

No error and no prejudicial error as to Defendant Covington.

Judges GEER and McCULLOUGH concur.